# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MIKE COAN, Individually and On Behalf of All Others Similarly Situated, Plaintiff, <br><br> v. <br><br> B. RILEY FINANCIAL, INC. BRYANT RILEY, TOM KELLEHER. and PHILLIP J. AHN, <br><br> Defendants. | Case No. 2:24-cv-00662-SPG-AJR <br><br> **ORDER GRANTING CHIN LEGACY GIFT TRUST UA DTD's MOTION FOR CONSOLIDATION OF RELATED ACTIONS AND GRANTING MIKE COAN'S REQUEST FOR LIMITED DISCOVERY [ECF NOS. 14, 15, 19]** |

Before the Court are the motions for consolidation of related actions and the appointment of lead plaintiff, and corresponding approval of the selection of lead counsel filed by Mike Coan ("Coan"), (ECF No. 14 ("Coan Mot.")), the KL Kamholz Joint Revocable Trust ("Kamholz Trust"), (ECF No. 15 ("Kamholz Trust Mot.)), and the Chin Legacy Gift Trust UA DTD and Chong Legacy Gift Trust UA DTD ("Chin Trust"), (ECF No. 19 ("Chin Trust Mot.")). Each of these plaintiffs filed opposition motions to the others' competing motions. (ECF Nos. 29 ("Coan Opp."), 30 ("Kamholz Trust Opp."), 31 ("Chin Trust Opp.")). Each of these plaintiffs also filed replies in support of their respective motions. (ECF Nos. 32 ("Coan Reply), 33 ("Kamholz Reply"), 34 ("Chin Trust Reply"). Having considered the parties' submissions, the relevant law, the arguments of counsel

-1-

during the hearing on the motions, and the record in this case, the Court **GRANTS IN PART** the Chin Trust's Motion and **GRANTS IN PART** the Coan Motion.  As set forth below, however, the Court postpones full determination of the motions in this Order until limited discovery has been completed.

## I.    BACKGROUND

This action was commenced on January 24, 2024, against Defendants B. Riley Financial, Inc., Bryan Riley, Tom Kelleher, and Phillip J. Ahn.  (ECF No. 1 ("Coan Action.")).  The proposed related action, *The KL Kamholz Joint Revocable Trust v. B. Riley Financial, Inc.*, No. 2:24-cv-02121-AB-JC, was filed on March 15, 2024.  In the Coan Action, Plaintiff alleges the following:

B. Riley is a financial services platform.  The company, through its subsidiaries, provides services including: investment banking, brokerage, wealth management, asset management, direct lending, business advisory, valuation, and asset disposition.  Brian Kahn is a client of B. Riley.  Kahn is the Chief Executive Officer of Franchise Group, Inc. ("FRG").  FRG is a holding company which acquires and manages companies, primarily franchises.  (Coan Action ¶ 3).  In May 2023, B. Riley entered into an agreement to assist Kahn in leading a management buyout of FRG.  The $2.8 billion to take FRG private was completed on August 21, 2023. (*Id.* ¶ 4).  On November 2, 2023, Kahn was implicated as the unnamed coconspirator in a conspiracy to defraud investors of $294 million in funds. After revelations that Kahn would likely be indicted, the company's stock price dropped 22%.  (*Id.* ¶ 7).  After the market closed on November 9, 2023, B. Riley revealed "significant details concerning the FRG transaction and the years-long series of complex financial transactions between B. Riley, Kahn, and the Company's respective subsidiaries, which culminated in the August 21, 2023 transaction." (*Id.* ¶ 8).  On this and related news, the Company's stock price fell another 15% on unusually trading volume.  (*Id.* ¶ 9).  "The Company's stock price continued to fall $4.59, or 14%, over the next consecutive trading

session to close at $22.01 per share on November 13, 2023, on unusually heavy trading volume." (*Id.* ¶ 9).

"Throughout the proposed class period, Defendants made materially false and/or misleading statements, as well as failed to disclose materially adverse facts about the company's business, operations, and prospects." (*Id.* ¶ 10). "Specifically, Defendants failed to disclose to investors: (1) that Brian Kahn had been credibly implicated in a conspiracy to defraud investors of millions of dollars; (2) that, in spite of this involvement, B. Riley continued to finance the transaction enabling Kahn and others to take FRG private through complex arrangements; (3) that the foregoing was reasonably likely to draw regulatory scrutiny to B. Riley; and (4) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis." (*Id.* ¶ 10). As a result of Defendant's acts and omissions, and the "precipitous" decline in the market value of the Company's securities, Plaintiff and other class members allege "significant losses and damages." (*Id.* ¶ 11).

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 42(a) permits a court to consolidate actions involving a common question of law or fact if doing so serves the purposes of judicial economy and convenience. "The district court has broad discretion under this rule to consolidate cases pending in the same district." *Inv. Rsch. Co. v. U.S. Dist. Ct. Cent. Dist. of Cal.*, 877 F.2d 777 (9th Cir. 1989). In determining whether to consolidate actions, the Court weighs the interest of judicial convenience against the potential for delay, confusion, and prejudice caused by consolidation. *Sw. Marine, Inc. v. Triple a Mach. Shop, Inc.*, 720 F. Supp. 805, 807 (N.D. Cal. 1989).

Second, The Private Securities Litigation Reform Act ("PSLRA") imposes early notice requirements on plaintiffs:

Not later than 20 days after the date on which the complaint is filed, the plaintiff or plaintiffs shall cause to be published, in a widely circulated

national business-oriented publication or wire service, a notice advising members of the purported plaintiff class—

> (I)      of the pendency of the action, the claims asserted therein, and the purported class period; and
>
> (II)     that, not later than 60 days after the date on which the notice is published, any member of the purported class may move the court to serve as lead plaintiff of the purported class.

15 U.S.C. § 78u-4(a)(3)(A)(i).

After the plaintiff satisfies the notice requirement, a court "shall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members . . . ." 15 U.S.C. § 78u-4(a)(3)(B)(i).  The PSLRA establishes a rebuttable presumption that "the most adequate plaintiff":

> (aa)   has either filed the complaint or made a motion in response to a notice under subparagraph (A)(i);
>
> (bb)   in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
> (cc)   otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).  A competing putative class member may defeat this presumption with evidence "that the presumptively most adequate plaintiff" either "(aa) will not fairly and adequately protect the interests of the class; or (bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

## III.   DISCUSSION

### A.     The Related Actions Should be Consolidated

Consolidation of related cases is appropriate where, as here, the actions involve common questions of law and fact, and therefore, consolidation would avoid unnecessary

cost, delay, and overlap in adjudication.  *See* Fed. R. Civ. P. 42(a).  Each of the related actions has been filed in this District alleging similar factual and legal grounds to support allegations of substantially identical legal theories.  Specifically, each action alleges violations of the Exchange Act, each presents the same theories for recovery, and each is based on the same allegedly wrongful course of conduct.  Additionally, both actions are at the beginning stages of litigation, so worries about timeline inefficiencies are here inapplicable.  *See Snyder v. Nationstar Mortg. LLC*, 2016 3519181 at *3 (N.D. Cal. June 28, 2016) ("A court may deny consolidation where two cases are at different stages of preparedness for trial.").  Finally, the plaintiffs in both related actions seek consolidation and have not argued that consolidation would lead to prejudice or delay in their cases.  *See* (Coan Mot. at 5); (Kamholz Trust Mot. at 11); (Chin Trust Mot. at 13-14).  For these reasons, the Court GRANTS the Chin Trust's Motion for Consolidation of Related Actions.  Because the Court grants the Chin Trust's Motion for Consolidation, the Court finds that Kamholz Trust Motion for Consolidation and the Coan Motion for Consolidation are now moot.

### B.     Plaintiffs Satisfied the PSLRA's Notice Requirement

To comply with the PSLRA, a plaintiff must (1) publish notice within 20 days of filing their complaint in (2) " a widely circulated national business-oriented publication or wire service," advising the putative class of (3) "the pendency of the action, the claims asserted therein, and the purported class period," as well as that (4), not later than 60 days after the notice's publication, any member of the putative class may move to serve as lead plaintiff.  15 U.S.C. § 78u-4(a)(3)(A)(i).

Here, Plaintiff Coan published notice of this lawsuit on January 24, 2024, the same day Plaintiffs filed suit in this Court.  *Compare* (Coan Mot., Exh. A) *with* (ECF No. 1 ("Compl.")).  Plaintiff published notice in *Business Wire*, (Coan Mot., Exh. A), a national, widely-circulated, business-oriented wire service, (*see Ferreira v. Funko, Inc.*, No. 2:20-cv-02319-VAP-PJWx, 2020 WL 3246328, at *4 (C.D. Cal. June 11, 2020)).  The notice states that "Glancy Pongay & Murray LLP ("GPM"), announces that it has filed a class

action lawsuit in the United States District Court for the Central District of California . . . on behalf of persons and entities that purchased or otherwise acquired B. Riley Financial, Inc. . . . common stock between **May 10, 2023 and November 9, 2023**, inclusive[.]" (Coan Mot., Exh. A) (emphasis in original).  The notice goes on to describe the claims alleged, and notifies investors "that they have **60 days from the date of this notice** to move the Court to serve as lead plaintiff in this action." (*Id.*) (emphasis in original).  Thus, Plaintiff's notice in *Business Wire* satisfies the requirements of the PSLRA.

### C.    Selection of Lead Plaintiff

Three aspiring lead plaintiffs filed motions in response to Plaintiff Coan's notice. Each aspiring plaintiff proffers evidence to argue why they should be appointed lead Plaintiff.  The Court turns to these arguments.

Under the PSLRA, the presumptively most adequate plaintiff (1) "either filed the complaint or made a motion in response to a notice under subparagraph (A)(i)"; (2) "has the largest financial interest in the relief sought by the class"; and (3) "otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure."  15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).  Additionally, although the PSLRA contemplates that the lead plaintiff may be a "group of persons" rather than a single individual, (15 U.S.C. § 78u-4(a)(3)(B)(iii)(1)), district courts applying the PSLRA have frequently construed this to mean a small group of manageable size that is capable of joint decision-making regarding the litigation.[1]

To begin, all three aspiring plaintiffs satisfy requirement (1) above by dint of either filing the initial complaint—i.e., Coan—or filing a motion in response to the class action notice—i.e., Kamholz Trust and Chin Trust.  Thus, the Court moves to requirement (2)—

---

[1] *See, e.g., In re Advanced Tissue Sciences Sec. Litig.*, 184 F.R.D. 346 (S.D. Cal. 1998) (winnowing a proposed group of 250 to six, because "the idea of appointing over 250 unrelated individual investors as lead plaintiffs runs afoul of Congress' [] intent in enacting the PSLRA").

namely, which aspiring plaintiff has the largest financial interest in the relief sought by the class.

The PSLRA does not specify how to calculate the "largest financial interest," but the approximate losses suffered are the most determinative. *Richardson v. TVIA, Inc.*, 2007 WL 1129344, at *13 (N.D. Cal. April 16, 2007). Coan represents that he "suffered financial harm of approximately $8,514.04 in the class period of the compliant he filed." (Coan Mot. at 7; Exh. B). The Kamholz Trust represents that it: "(1) purchased 3,623 B. Riley 6% Senior Notes; (2) expended $72,015 on its transactions in B. Riley 6% Senior notes; (3) retained 3,623 of its B. Riley 6% Senior Notes; and (4) as a result of the disclosures of the disclosures of Defendants' alleged fraud, incurred losses of approximately $13,541 in connection with its Class Period transactions in B. Riley securities." (Kamholz Trust Mot. at 14); (ECF No. 17-1 ("Pafiti Decl.") Exh. A). Finally, the Chin Trust represents that, during the Class Period, "Movants acquired 227,491 net shares and 227,491 total shares of B. Riley common stock and suffered losses of $3,933,622.68 when calculated using a last in, first out methodology." (Chin Trust Mot. at 17). In light of the representations and declarations of each aspiring plaintiff, the Chin Trust has the largest financial interest in the relief sought by the class.

Once a court "determines which plaintiff has the biggest stake, the court must appoint that plaintiff as lead, unless it finds that he does not satisfy the typicality or adequacy requirements." *In re Cavanaugh*, 306 F.3d 726, 732 (9th Cir. 2002). To make this initial Rule 23 determination, the Court looks at the information provided by the plaintiff in its pleadings. (*Id.* at 730). "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (citation omitted). To determine Rule 23 adequacy, courts "ask two questions: (1) [d]o the representative plaintiffs and their counsel have any conflicts of interest with other class

members, and (2) will the representative plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003).

The Chin Trust argues that their claims are typical of the putative class because "Movants acquired B. Riley securities during the Class Period, suffered damages as a result of the false and misleading statements, and possess claims against Defendants under the federal securities laws." (Chin Trust Mot. at 19). Likewise, the Chin Trust represents that "their interests are perfectly aligned with—and by no means antagonistic to—the interests of the Class." (*Id.* at 19).

Both Coan and Kamholz argue that the presumption in favor of the Chin Trust should be dropped because "they are inadequate, atypical, and subject to unique defenses related to the fact that their shares were acquired directly from B. Riley in connection with B. Riley's privately negotiated acquisition of Targus." (Coan Opp. at 7); *see also* (Kamholz Opp. at 15). Moreover, the Kamholz trust argues that "serious questions exist" with respect to "their standing to pursue claims in this litigation[.]" (Kamholz Opp. at 15). Specifically, the Kamholz trust argues the Chin Trust "apparently did not spend *any* money in order to acquire the B. Riley shares that are the subject of this litigation. Rather, it appears that the underlying shares were 'transferred' to them for free, without any consideration." (*Id.* at 15). For the following reasons, the Court holds that the Chin Trust has standing in this action, but that Coan and Kamholz have raised serious questions concerning the Chin Trusts' adequacy and typicality under Rule 23(a). In light of these questions, the Court grants Coan's request for limited discovery.

Because standing is "a threshold question," the Court begins with Kamholtz Trust's argument that the Chin Trust does not have Article III standing. *Warth v. Seldin*, 422 U.S. 490, 498 (1975). According to Kamholtz, the Chin Trust does not have standing because they did not "purchase" their B. Riley shares. (Kamholtz Opp. at 15). Article III standing consists of three "irreducible" elements: (1) injury-in-fact, which is a "concrete and particularized" harm to a "legally protected interest"; (2) causation in the form of a "fairly traceable" connection between the asserted injury-in-fact and the alleged actions of the

-8-

defendant; and (3) redressability, or a non-speculative likelihood that the injury can be remedied by the requested relief.  *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992).  These requirements ensure that a plaintiff has a sufficiently personal stake in the outcome of the suit so that the parties are adverse.  *See Baker v. Carr*, 369 U.S. 186, 204 (1962).  In the securities class action context, a court must assess standing to sue based upon the standing of lead plaintiffs and not upon the standing of unidentified class members.  *Warth*, 422 U.S. at 502.

Although Kamholz Trust does not frame the argument this way, the Kamholz Trust seeks to challenge whether the Chin Trust has suffered an injury-in-fact.  They argue, roughly: since the underlying shares were transferred to them for free—i.e., they did not spend any money in order to acquire the B. Riley shares—the Chin Trust did not suffer any injury.  (Kamholtz Opp. at 15).[2]  The Chin Trust responds that the Chin Trust "acquired their B. Riley Shares by making an investment decision to accept the Family Trusts' B. Riley shares through a transfer from the Family Trust.  [The Chin Trust's] decision to transfer, receive, and retain those shares had a clear nexus to the fraud alleged in this case as it was made based on the price of B. Riley stock, which in turn was based on the market's assessment of the publicly available information."  (Chin Reply at 12); *see also* (*Id.* Exh. C).  In other words, the Chin Trust argues that, because the Chin Trust decided—based on the publicly available market price—to receive and retain the B. Riley shares from the Family Trust, there exists a concrete injury.  When the stock price plummeted because of alleged fraud, the Chin Trust lost money; and this money would not have been lost but for their decision—based on publicly available data—to keep the stock.

According to the Chin Trust, the Family Trust acquired its shares of B. Riley in a stock-for-stock exchange of its Targus shares.  *See* (Chin Trust Opp. at 12); *see also* (*Id.,*

---

[2] Kamholtz Trust cites several out of circuit cases, most of which—they admit—deal with plaintiffs who receive dividends pursuant to a corporate plan.  *See, e.g., City of Omaha Police and Firefighters Ret. Sys. v. Cognyte Software Ltd.*, 2023 WL 645 8930, at *3 (S.D.N.Y. Oct. 4, 2023).  Because this case does not deal with dividends pursuant to a corporate plan, the Court finds the out of circuit authority inapposite and unpersuasive.

Exh. C) ("On February 27, 2023, Chong Gift Trust received 113,746 shares . . . of B. Riley common stock by way of direct transfer from the Family Trust . . . Four months earlier, on October 22, 20233, The Family Trust acquired 227,491 shares of B. Riley common stock . . . in exchange for 3,913,411 shares of Targus stock, which the Family Trust previously owned."). Then, the Chin Trust accepted the Family Trusts' B. Riley shares through a transfer from the Family Trust. As the Chin Trust makes clear, there was "no consideration paid from the Chin Gift Trust and Chong Gift Trust to the Family Trust in exchange for the transfer of B. Riley stock." (Chin Trust Reply., Exh. C ¶ 14). The relevant question, then, is whether the Chin Trust's decision to accept the Family Trusts' B. Riley shares through a transfer from the Family Trust is sufficient to confer Article III standing. For the following reasons, the Court finds it is sufficient.

To begin, the Court notes that out of circuit authority cited by several of the parties holds that those who receive dividends pursuant to a corporate plan "do not make a purchase within the scope of § 10(b) when [they] did not participate in any sort of investment decision and made no election whether or not to receive [the stock] (instead of a cash dividend), nor had any choice as to how much [of the stock] to receive in the dividend." *City of Omaha Police and Firefighters Ret. Sys. v. Cognyte Software Ltd.*, 2023 WL 645 8930, at *3 (S.D.N.Y. Oct. 4, 2023) (cleaned up). The facts in this case, however, are distinguishable, given that the Chin Trust was – in accepting the shares – not passive vis-à-vis the Family Trust, and the case does not concern dividends pursuant to a corporate plan. Instead, the Chin Trust credibly asserts that the decision to acquire the shares was an investment decision on their part. Second, while the Chin Trust acknowledges that no consideration was involved in the transfer of shares, the Chin Trust's decision to acquire the shares was far from arbitrary. As the Chin Trust argues, "[the Chin Trusts'] decision to transfer, receive, and retain those shares had a clear nexus to the fraud alleged in this case as it was made based on the price of B. Riley stock, which in turn was based on the market's assessment of the publicly available information." (Chin Trust Reply at 12).

Consider the following analogy. Emily gives Brenda, without notice, a gold and diamond necklace for her birthday. Emily represents to Brenda that the gifted necklace is worth $2,500. Brenda, needing the money and believing that the necklace is worth $2,500, decides to pawn the necklace. Unfortunately for Brenda, the necklace is made of cubic zirconia and worth about $100. Call this the "pure gift" case. Compare this, then, to the "impure gift" case, where Stewart wants to give to Peter, his son, 100 shares of XYZ Corp. stock. Stewart asks Peter if Peter would like to accept these shares and tells Peter that, if Peter accepts the shares, they will become Peter's responsibility. Peter considers the offer, looking at public information about the XYZ Corp. After some thought about the shares and his own portfolio, Peter accepts the stocks from Stewart with the intention to keep them. A short time later, it is discovered that the XYZ Corporation and its board have engaged in massive fraud. Peter checks his stocks and discovers that they have depreciated greatly.

Applying these two hypothetical scenarios to the case at hand, Kamholtz argues that Chin Trust's receipt of the B. Riley shares is like the pure gift case above. While it may be unfortunate that the Chin Trust lost money because of the alleged fraud, it is not correct to say that the Chin trust was *injured* by the loss in share value. Just as Brenda may be disappointed that the necklace is worth very little, the Chin Trust may likewise be disappointed. However, neither Brenda nor the Chin Trust were injured. As Kamholtz argues, when one receives a pure gift, if one's beliefs about the value of the gift are off the mark due to misrepresentation, one may be disappointed, but one is not injured. The Chin Trust rejects that this analogy and line of thinking holds in the case at hand. Instead, the Chin Trust argues that this case is akin to the impure gift case. Just as Peter made a reasoned decision whether to accept Stewart's offer, the Chin Trust made a reasoned decision to accept the B. Riley Shares. Because the Chin Trust, like Peter, made a choice based on public financial disclosures to accept and retain the shares, the Chin Trust was injured when the alleged fraud occurred. In other words, choice, deliberation, and reliance,

all of which are elements present in the impure gift case, open the receiver up to possible injury, whether economic or otherwise.

Here, the Court agrees with the Chin Trust. The decision to accept and retain the B. Riley shares is sufficient to allege that they suffered losses traceable to Defendants' conduct. In light of these facts, the Chin Trusts' representations, and case law in this Circuit, the Court is satisfied that the Chin Trust has Article III standing in this action. In particular, the Court is satisfied that there is an alleged injury-in-fact as to the Chin Trust because (i) the Chin Trust owns the B. Riley shares outright, with full privileges of ownership, (ii) the decision to retain these stocks was an investment decision, and (iii) that investment decision was based on the Chin Trusts' assessment of publicly available market data. In other words, because the Chin Trust has alleged that "*they* suffered losses traceable to defendants' conduct and that *they* [seek] damages to redress *their* losses," the Court finds that the Chin Trust has standing in this action. *Shurkin v. Holden State Vintners Inc.*, 471 F. Supp. 2d 998, 1023 (N.D. Cal. Dec. 30, 2006).

The Court moves to Coan and Kamholz's second set of arguments against the Chin Trust – namely, that the presumption in favor of the Chin Trust should be dropped because "they are inadequate, atypical, and subject to unique defenses related to the fact that their shares were acquired directly from B. Riley in connection with B. Riley's privately negotiated acquisition of Targus." (Coan Opp. at 7); *see also* (Kamholz Opp. at 15). Specifically, Coan and Kamholz argue that the Chin Trust is subject to unique damages-related defenses because they acquired their B. Riley shares through undisclosed transactions involving the Targus merger with B. Riley. Indeed, Coan suggests that the Chin Trust may have had access to non-public information regarding the merger, which would violate the long-standing fraud-on-the-market presumption adopted in *Levinson*. *See Basic, Inc., v. Levinson*, 485 U.S. 224, 247 (1988). If so, then "the Legacy Trusts' claims are atypical of the other Class members that actually purchased or sold B. Riley securities, thereby rendering the Legacy Trusts inadequate and otherwise subject to unique defenses." (Kamholtz Opp. at 20).

The Chin Trust responds that, as disclosed in the PSLRA Certifications, the Chin Trust "acquired their B. Riley shares from the Family Trust on February 2023, not in the Targus Merger." (Chin Trust Reply at 17). According to the Chin Trust, Coan has consistently attempted to collapse these two transactions. (*Id.*) The Chin Trust emphasizes that "the Family Trust is not seeking to be appointed Lead Plaintiff and has no interest in this case." (Chin Trust Reply at 15). The Chin Trust did not, it argues, acquire their stock pursuant to a merger. Similarly, the Chin Trust emphasizes that its PSLRA certification correctly identified the total number of B. Riley stocks acquired.[3] On this factual point, the Court agrees with the Chin Trust. However, it is – as of now – not entirely clear whether this fact alone is sufficient to rebut the worries raised by Kamholtz and Coan. Put simply, although it is true that the Chin Trust did not acquire its shares by virtue of a merger, it is also true that the Family Trust and the Chin Trust are administered by the same trustees. *See* (ECF No. 34-4 ¶¶ 2-3). Additionally, the transfer of B. Riley stocks between the Family Trust and the Chin Trust did not include consideration, as discussed above. If so, then the question whether and to what degree these two trusts are distinct takes on particular salience. In light of this and related questions, Coan requests that this Court grant limited discovery into the Chin Trust and their involvement in the Targus Acquisition. (Coan Opp. at 14). Here, the Court agrees.

The PSLRA permits this Court to order discovery into an aspiring movant if an opposing movant demonstrates "a reasonable basis for a finding that [an aspiring movant

---

[3] Kamholtz argues that there are "discrepancies" between the Chin Trusts' sworn certifications concerning the amount of common stock held by the Chin Trust and public data sources "available on *Bloomberg* and *Seeking Alpha*" concerning the total volume of shares of B. Riley common stock traded during the relevant time frame. (Kamholtz Opp. at 22); *see also*, *Camp v. Qualcomm Inc.*, 2019 WL 277360, at *3 (S.D. Cal. Jan. 22, 2019) (holding that significant misinformation in transactions records prohibit a movant from satisfying the adequacy and typicality requirements of Rule 23). However, the Chin Trust offers competent evidence in its Reply to show that Kamholtz failed to take into account the "shelf registration" details at the time of the Targus merger. *See* (Chin Trust Reply at 15-16).

is] incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iv). As a matter of case management, it would be preferable to engage now in limited discovery as to the adequacy of the Chin Trust to serve as lead plaintiff in this case. Accordingly, the Court GRANTS Coan's request for leave to conduct limited discovery into the Chin Trust's adequacy.[4]

## IV.    CONCLUSION

For the foregoing reasons:

1.    The Court **GRANTS, IN PART,** the Chin Trust's Motion.

   a.    Pursuant to Fed. R. Civ. P. 42(a), this action is to be consolidated with LA CV 24-02121-AB(JCx) for all purposes, including, without limitation, discovery, pretrial proceedings, and trial.

   b.    Every pleading filed in the Action shall bear the following caption: *In re B. Riley Financial, Inc. Securities Litigation*, Master File No. 2:24-cv-00662-SPG-AJR

   c.    The Civil Action No. LA CV 24-00662-SPG(AJRx) shall constitute the master file for every action in the Consolidated Action. When the document being filed pertains to all actions, the phrase "All Actions" shall appear immediately after the phrase "This Document Relates To:" in the caption. When a pleading applies only to some, but not all, of the actions the document shall list, immediately after the phrase "This

---

[4] The Court does note that the Chin Trust submits a sworn declaration attesting to three major facts relevant to the discovery request: (i) Chin and Chong (the Chin Trust's trustees) did not participate in any negotiations in connection with the Targus acquisition (ECF No. 34-4 ¶ 10); (ii) Chin and Chong did not discuss the Targus acquisition with executives or directors of either Targus or B. Riley (ECF No. 34-4 ¶¶ 11-13); and (iii) Chin and Chong did not discuss non-public information with Mikel Williams or other B. Riley or Targus executives or board members (ECF No. 34-4 ¶¶ 11-13). While helpful to this Court, the Court still finds that Coan and Kamholtz have raised questions sufficient to call the truth of these assertions into doubt. Thus, limited discovery is warranted.

Document Relates To:" the docket number for each individual action to which the document applies, along with the last name of the first listed plaintiff in that action.  All related actions subsequently filed in, or transferred to, this District shall be consolidated into the Consolidated Action and subject to this order.

    d.    All related actions subsequently filed in, or transferred to, this District shall be consolidated into the Consolidated Action and subject to this order.

2.    The Court **GRANTS, IN PART**, Coan's Motion insofar as it requests limited discovery into the Chin Trust and their involvement in the Targus Acquisition. The time period for such discovery shall not exceed 45 days from the date of this order.  Extensions from this deadline will be strongly disfavored, and will only be granted upon a showing of good cause.

3.    In light of the grant of limited discovery, the Court here postpones full determination of the three motions addressed in this order.

**IT IS SO ORDERED.**

Dated: August 7, 2024

_____
HON. SHERILYN PEACE GARNETT
UNITED STATES DISTRICT JUDGE