# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| *In re B. Riley Financial, Inc. Securities Litigation,*<br><br>This Document Relates To:<br><br>All Actions | Case No. 2:24-cv-00662-SPG-AJR<br><br>**ORDER GRANTING PLAINTIFF KAMHOLZ TRUST'S MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL AND DENYING PLAINTIFF COAN AND CHIN TRUSTS' MOTIONS**<br>**[ECF NOS. 14, 15, 19]** |

Before the Court are the motions and supplemental memoranda for the appointment of lead plaintiff and corresponding approval of the selection of lead counsel filed by Plaintiff Mike Coan ("Coan"), (ECF No. 14 ("Coan Mot.")), Plaintiff KL Kamholz Joint Revocable Trust ("Kamholz Trust"), (ECF No. 15 ("Kamholz Trust Mot.")), and Plaintiffs Chin Legacy Gift Trust UA DTD and Chong Legacy Gift Trust UA DTD (collectively, "Chin Trusts"), (ECF No. 19 ("Chin Trusts Mot.")). Plaintiffs also filed supplemental memoranda. *See generally* (ECF Nos. 49 ("Coan Memo"), 56 ("Kamholz Trust Memo"), 67 ("Chin Trusts Opp."), 75 ("Coan Reply"), and 82 ("Kamholz Trust Reply")). The Court has read and considered the matters raised with respect to the motions and has concluded these matters are suitable for decision without oral argument. *See* Fed. R. Civ. P. 78(b);

-1-

C.D. Cal. L.R. 7-15. Having considered the parties' submissions, the relevant law, and the record in this case, the Court GRANTS Kamholz Trust's Motion and DENIES Coan and Chin Trusts' Motions.

## I. BACKGROUND

In its previous Order, the Court recounted at length the factual and procedural background of this case. *See* (ECF No. 44 ("August 2024 Order")). The Court therefore discusses only the facts that are relevant to the present motions.

In March 2024, all three Plaintiffs in this action moved for appointment of lead plaintiff and approval of lead counsel. *See generally* (ECF Nos. 14 ("Coan Mot."), 15 ("Kamholz Trust Mot."), and 19 ("Chin Trusts Mot.")). In its August 2024 Order, the Court determined that all three Plaintiffs satisfied the requirements of 15 U.S.C. § 78u-4(a)(3)(A) by "either filing the initial complaint—i.e., Coan—or filing a motion in response to the class action notice—i.e., Kamholz Trust and Chin Trust[s]." (August 2024 Order at 6). Further, the Court determined which of the three Plaintiffs has the largest financial interest in the relief sought by the class, finding that, "[i]n light of the representations and declarations of each Plaintiff, the Chin Trust[s] ha[ve] the largest financial interest in the relief sought by the class." (*Id.* at 7). In addition, the Court relied on information provided by the Chin Trusts, initially showing that the Chin Trusts appeared to satisfy the requirements of Rule 23(a) regarding typicality and adequacy, and therefore, the Court initially determined the Chin Trusts had made a *prima facie* showing that they are presumptively the most adequate plaintiff. (*Id.* at 7-8).

Both Coan and Kamholz, however, argued that the presumption in favor of the Chin Trusts is rebutted because the Chin Trusts are "subject to unique damages-related defenses because they acquired their B. Riley shares through undisclosed transactions involving the Targus merger with B. Riley." (*Id.* at 12). Considering Defendant's acquisition of Targus Cayman Holdco Limited (hereinafter, "Targus") and the circumstances pertaining to the Chin Trusts' procurement of their B. Riley shares, the Court found the circumstances "raised questions" regarding the Chin Trusts' ability to adequately represent the class. (*Id.*

at 14, n.4). These serious questions remain paramount, as the Court determines whether the Chin Trusts in this case are "subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II). To make an informed ruling, the Court granted Plaintiffs leave to conduct limited discovery to better understand the circumstances surrounding the Chin Trusts' "involvement," if any, "in the Targus Acquisition." (August 2024 Order at 13). Following the limited discovery, all three Plaintiffs filed supplemental briefing, seeking appointment of lead plaintiff and approval of lead counsel. As described in the briefing, the limited discovery revealed the following facts—none of which the Plaintiffs seem to dispute:

In 2005, Kien Hoe Daniel Chin (hereinafter, "Chin") and Wai-Kiet Chong (hereinafter, "Chong"), a married couple, founded and owned a company named Sanho but often referred to as Hyper. (ECF No. 73-1 ("Chin Deposition") at 12, 28-29). Chin and Chong also served as trustees of the Chin and Chong Family Trust (hereinafter, "the Family Trust"). See (ECF No. 34-4 ("Chin and Chong Decl.") ¶ 2). Currently, Chong serves as trustee of the Chin Legacy Gift Trust UA DTD while Chin serves as trustee of the Chong Legacy Gift Trust UA DTD. (Id. ¶¶ 3, 4).

Around May 2021, Targus acquired Hyper █████████████████ ████████████████████████████████████ (Chin Deposition at 21). Hence, upon Targus's acquisition of Hyper, ████████████████████████████ worth of Targus shares and subsequently transferred those shares to their Family Trust for "estate planning" purposes. (Id. at 29). Relatedly, Chong served as Vice President of Finance and Operations for Hyper—now being a subsidiary of Targus—while Chin served as Senior Vice President of Technology at Targus. See (ECF No. 73-2 ("Chong Deposition") at 13-14, 54); (Chin Deposition at 22, 64). In his role, Chin █████████████ ████████████████. (Chin Deposition at 23-24). Meanwhile, in October 2022, Defendant B. Riley acquired Targus. See generally (ECF No. 70-2 ("Securities Purchase Agreement" or "SPA")). In his deposition, Chin ████████████████████████████████ ████████████████████████████████████████████████████████████████████

1  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (Chin Deposition at 18-19).  Specifically, ▮▮▮▮▮▮▮▮

2  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

3  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (*Id.* at 96).  In fact, pursuant to the

4  acquisition, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

5  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

6  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (ECF No. 63-6 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.  Additionally, the

7  Family Trust, as shareholders of Targus, executed a Securities Purchase Agreement, which

8  among other things, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

9  ▮▮▮ (SPA at 65-66, 92-93).  On February 27, 2023, after receiving the B. Riley shares

10 from the acquisition, the Family Trust appeared to have transferred the B. Riley shares to

11 the Gift Trusts.  (Chin Trusts Decl. ¶¶ 6-7).

## II.   LEGAL STANDARD

The Private Securities Litigation Reform Act ("PSLRA" or the "Act") states that a court "shall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members . . . ."  15 U.S.C. § 78u-4(a)(3)(B)(i).  "The 'most capable' plaintiff—and hence the lead plaintiff—is the one who has the greatest financial stake in the outcome of the case, so long as he meets the requirements of Rule 23."  *In re Cavanaugh*, 306 F.3d 726, 729 (9th Cir. 2002).  The Act provides a three-step process to identify the lead plaintiff.  *Id.*  The first step consists of "publicizing the pendency of the action, the claims made and the purported class period."  *Id.* (citing 15 U.S.C. § 78u-4(a)(3)(A)).  Under the second step, the "district court must consider the losses allegedly suffered by the various plaintiffs" and must select the "presumptively most adequate plaintiff"—namely, "the one who 'has the largest financial interest in the relief sought by the class' and 'otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.'"  *Id.* at 729-30 (quoting 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)).[1]

---

[1] As set forth in the Background section above, the Court's August 2024 Order addressed the first step, consisting of "publicizing pendency of the action, the claims made and the

Under the third step, other plaintiffs are given "an opportunity to rebut the presumptive lead plaintiff's showing that it satisfies Rule 23's typicality and adequacy requirements." *Id.* at 730 (citing 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)). These other plaintiffs may defeat this presumption with evidence "that the presumptively most adequate plaintiff" either "(aa) will not fairly and adequately protect the interests of the class; or (bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II). Further, "[i]n seeking evidence that could rebut the presumptive lead plaintiff's showing on these points, other plaintiffs may be allowed to conduct discovery. . . ," *Cavanaugh*, 306 F.3d at 730, as was allowed in the present case. If, after undertaking the three-step process, "the district court determines that the presumptive lead plaintiff does not meet the typicality or adequacy requirement, it then must proceed to determine whether the plaintiff with the next lower stake in the litigation has made a prima facie showing of typicality and adequacy." *Id.* at 731.

### III. DISCUSSION

#### A. Selection of Lead Plaintiff

At the core of this dispute, both Plaintiffs Coan and Kamholz Trust contend that Plaintiffs the Chin Trusts are atypical, inadequate, and subject to unique defenses that render the Chin Trusts incapable of adequately representing the class. Plaintiffs Coan and Kamholz Trust advance a number of arguments but assert two main arguments to support their positions. First, according to Coan and Kamholz Trust, the SPA from B. Riley's acquisition of Targus ███████████████████████████████████████████████. Second, independent from the SPA's purported limitations, Chin and Chong, as trustees of the Family Trust and the Gift Trusts, ██████████████████████████████████████████████████████████████████████████. These circumstances, Coan and Kamholz Trust maintain, present the possibility that unique

---

purported class period," *Cavanaugh*, 306 F.3d at 729, and the second step, consisting of the Court's consideration of the losses suffered by the various plaintiffs and selecting the presumptively most adequate plaintiff, *see* 15 U.S.C. § 78u-4(a)(3)(A), (B).

defenses against the Chin Trusts would seriously hinder the litigation central to the core class-wide issues, thereby disqualifying the Chin Trusts as lead plaintiffs. Should the Court disqualify Plaintiffs the Chin Trusts, both Coan and Kamholz Trust—as the remaining candidates—assert that the Court should appoint each as the lead plaintiff, or alternatively, appointment both as co-lead plaintiffs. The Court addresses each issue in turn.

### 1. Chin Trusts as Lead Plaintiff

Starting with Plaintiffs the Chin Trusts, the Court finds that the circumstances surrounding their acquisition and transfer of the B. Riley shares subject them to unique defenses rendering them incapable of adequately representing the putative class members. As an initial matter, the Court emphasizes that its duty in appointing lead plaintiff serves to "protect[] the interests of the class." *In re Peregrine Sys., Inc. Sec. Litig.*, No. CIV.02 CV 870-J(RBB), 2002 WL 32769239, at *6 (S.D. Cal. Oct. 11, 2002); *see also In re Critical Path, Inc. Sec. Litig.*, 156 F. Supp. 2d 1102, 1110 (N.D. Cal. 2001) ("The Court, in determining whether a prospective lead plaintiff has made a prima facie showing of typicality and adequacy, must be mindful that it is protecting the interests of the class."). This task therefore requires the Court to decline appointment of a movant lead plaintiff if "such appointment may affect the class at later stages in the lawsuit." *In re Critical Path*, 156 F. Supp. at 1110.

Turning to typicality and adequacy, "[t]he test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (citation omitted). To determine adequacy under Rule 23, courts "ask two questions: (1) [d]o the representative plaintiffs and their counsel have any conflicts of interest with other class members, and (2) will the representative plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003). The possibility of Defendant raising unique defenses, whether successful or not, calls into question the typicality and adequacy of the movant lead plaintiff. *See In re*

1 *Peregrine Sys.*, 2002 WL 32769239, at *7 ("[W]hether these defenses will be successful is
2 of no matter. The fact that plaintiffs will be subject to such defenses renders their claims
3 atypical of other class members.") (internal quotation marks omitted) (quoting *Landry v.*
4 *Price Waterhouse Chartered Accountants*, 123 F.R.D. 474, 476 (S.D.N.Y. 1989)).

5       Here, the discovery produced by the parties raises sufficient concerns regarding the
6 typicality and adequacy of the Chin Trusts. First, all movant Plaintiffs contest the
7 applicability and scope of the SPA that Chin and Chong executed pursuant to B. Riley's
8 acquisition of Targus. On one hand, according to both Plaintiffs Coan and Kamholz Trust,
9 the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
10 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
11 ▮▮▮▮▮▮▮▮▮ On the contrary, the Chin Trusts maintains that ▮▮▮▮▮
12 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. This lengthy, yet uncertain, discussion
13 regarding the contours of the SPA, itself, demonstrates the possibility that the Chin Trusts
14 may face unique defenses raised by Defendant. Indeed, the movant lead Plaintiffs—
15 without any word from Defendant yet—dedicated five competing briefs and countless
16 exhibits to discern the SPA's applicability in this matter, thereby signaling that this issue
17 may potentially distract the litigation from the central class issues.

18       Further, the unknown circumstances involving Chin and Chong's knowledge of or
19 communications about the Targus acquisition buttress this possibility of unique defenses
20 against the Chin Trusts. Because the movant Plaintiffs, without Defendant, conducted
21 limited discovery in a condensed 45-day timeline, future discovery surrounding Chin and
22 Chong's acquisition of the B. Riley stock may provide additional details. The limited
23 discovery nonetheless reveals that Williams, as the CEO of Targus, ▮▮▮▮▮▮
24 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
25 ▮▮▮▮▮▮▮▮ (Chin Deposition at 96). The details pertaining to this merger and
26 acquisition, as it relates to the receipt of B. Riley shares, present potential unique defenses
27 that speak to the Chin Trusts' reliance on public misrepresentations—a key issue for federal
28 securities claims such as this one. *See In re Critical Path*, 156 F. Supp. 2d at 1110–11

("Appointing as lead plaintiff one who acquired its shares in a private transaction invites lengthy litigation both at the class certification stage and thereafter of whether that plaintiff is subject to unique defenses. Certainly the Court should not appoint as lead plaintiff one whose appointment will invite scrutiny of the details of a private transaction."); *see also Basic Inc. v. Levinson*, 485 U.S. 224, 247 (1988). Accordingly, although Plaintiffs Chin Trusts may claim that they have the largest financial stake here, their ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ "risks triggering unique defenses that would distract from the focus of the litigation." *Sayce v. Forescout Techs., Inc.*, No. 20-CV-00076-SI, 2020 WL 6802469, at *8, n.10 (N.D. Cal. Nov. 19, 2020). The Court therefore denies Plaintiffs Chin Trusts' motion for appointment of lead plaintiff and approval of lead counsel.[2]

### 2. Kamholz Trust or Coan as Lead Plaintiff

This now leaves only Plaintiffs Kamholz Trust and Coan for consideration. Plaintiff Kamholz Trust, claiming a loss of approximately $13,541, asserts that it has the next largest financial stake, *see* (ECF No. 30 at 12), which in its view, "alone suffices to mandate denial of Coan's motion." (*Id.* at 15). To counter, Plaintiff Coan does not challenge Kamholz Trust's financial stake; instead, Coan contends that Kamholz Trust, as "a minority security holder of 6.00% 2028 Notes," is an atypical plaintiff because Defendant may have "the power to revoke the [Kamholz Trust's] standing by redeeming the notes." (Coan Memo at 30). Alternatively, however, both Plaintiffs request that the Court appoint them as co-lead plaintiffs because Coan could "represent the interest of common stock purchasers" while Kamholz Trust adequately represent the noteholders and their interests. *See* (Coan Reply

---

[2] Plaintiffs Coan and Kamholz Trust also argue that Plaintiffs Chin Trusts amassed unrealized gains from the B. Riley stock, thereby raising potential unique defenses as to their purchase price. *See* (Coan Memo at 20–22). Additionally, Plaintiffs Coan and Kamholz Trust continue to contend that the Chin Trusts lack standing, as the limited discovery purportedly reveals that Chin and Chong did not make an investment decision but instead merely transferred the B. Riley shares from the Family Trust to the Gift Trusts. *See* (Kamholz Trust Memo at 9-11). The Court considered these contentions in its August 2024 Order and determined the Chin Trusts have standing. (August 2024 Order at 8-12).

Memo at 5, n.2); (ECF No. 33 at 16) (citing multiple cases where courts appointed class leadership structures comprised of investors in both debt and equity securities "to ensure that the interests of all investors are represented").

Before turning to the merits, the Court acknowledges that several courts have reached different conclusions regarding appointment of co-lead plaintiffs in complex securities class actions, such as this one. As an initial matter, the Ninth Circuit has generally cautioned against appointing co-lead plaintiffs, reasoning that "appointment of multiple lead plaintiffs would also tend to run counter to the sequential inquiry we outlined for selection of lead plaintiff." *Cohen v. U.S. Dist. Ct. for N. Dist. of California*, 586 F.3d 703, 711 (9th Cir. 2009) (citing *Cavanaugh*, 306 F.3d at 730–31). Further, the underlying policy objectives of the PSLRA generally counsel against appointment of co-lead plaintiffs. Several district courts have explained that Congress, when enacting the PSLRA, "fear[ed] that plaintiffs' counsel in securities cases were more concerned with their own financial interest rather than those of their clients." *Reiger v. Altris Software, Inc.*, No. 98CV0528J(JFS), 1998 WL 1986953, at *5 (S.D. Cal. Sept. 14, 1998). To avoid this outcome, "Congress wanted to place the control within the clients rather than the clients' attorneys." *Id.* Thus, appointing "[m]ore than one lead plaintiff," the court reasoned, "would detract from the client's control of the litigation[,] and the attorneys would exert more control than the clients." *Id.* at 6; *see also id.* ("In addition, appointing more than one lead plaintiff would unnecessarily increase the time and expense spent on preparing and litigating the case.") (internal quotation marks and citation omitted).

Therefore, given the legislative background, district courts have often declined to appoint co-lead plaintiffs. *See, e.g.*, *Tanne v. Autobytel, Inc.*, 226 F.R.D. 659, 673 (C.D. Cal. 2005) ("[T]he court concludes, a co-lead plaintiff structure is unnecessary, and might harm the class by dividing responsibility for the supervision of class counsel."); *In re Surebeam Corp. Sec. Litig.*, No. 03 CV 1721JM(POR), 2004 WL 5159061, at *10 (S.D. Cal. Jan. 5, 2004) (denying appointment of co-lead plaintiffs for section 10 and section 11 securities claims that "are based on the same facts" and emphasizing "the different scienter

standards do not defeat the presumption that one lead plaintiff can vigorously pursue all available legal claims"); *Gluck v. CellStar Corp.*, 976 F. Supp. 542, 549 (N.D. Tex. 1997) (concluding that appointment of co-lead plaintiffs and their co-counsel "would inevitably delegate more control and responsibility to the lawyers for the class and make the class representatives more reliant on the lawyers"). *But see In re Peregrine Sys.*, 2002 WL 32769239, at *12 (appointing co-lead plaintiffs to represent class members asserting both Securities Act and Exchange Act claims to "better represent the class members' varying and perhaps conflicting interests").

On the other hand, putative securities class actions comprised of class members who invested in debt and equity securities, such as the circumstances here, have led other district courts to appoint co-lead plaintiffs who may "vigorously advocate on behalf of similarly-situated . . . purchasers." *In re MGM Mirage Sec. Litig.*, No. 2:09-CV-01558-GMN, 2010 WL 4316754, at *5 (D. Nev. Oct. 25, 2010) (appointing co-lead plaintiffs where some class members purchased only common stock during the relevant class period while other class members purchased debt securities). Nonetheless, a putative class with members who purchased different types of securities neither categorically renders one plaintiff atypical or inadequate to represent the entire class nor automatically requires appointment of co-lead plaintiffs or creation of subclasses. *See Miller v. Ventro Corp.*, No. 01-CV-1287, 2001 WL 34497752, at *10 (N.D. Cal. Nov. 28, 2001) ("[T]he fact that plaintiffs might have different types of securities also does not require a separate class or co-lead plaintiffs."); *cf. In re Cendant*, 182 F.R.D. 144, 148 (D.N.J. 1998) (stating that, in the context of competing lead plaintiff motions within a putative securities class, "every warrior in this battle cannot be a general"). "More likely than not," the court in *Miller* explained, "the putative class in any large shareholder action will be composed of plaintiffs whose portfolios differ in composition from one another." 2001 WL 34497752, at *10. The court nonetheless concluded that this difference among class members "does not justify the appointment of potentially innumerable co-lead plaintiffs to ensure that each individual interest is represented." *Id.* In sum, a "balance must be struck." *Id.*

Thus, to strike this proper balance, courts carefully consider whether a movant, who purchased one type of security, poses concerns regarding Article III standing or conflicts of interest. *See Id.* ("The types of situations in which subclasses or co-lead plaintiffs have been created—potential problems of standing, costs of litigation, etc.—are not truly present. On balance, the differences between the stockholder and bondholder classes would appear to be not so significant as to warrant the creation of a separate subclass."). Notwithstanding the class's composition of both common stockholders and debt holders, pleading the same underlying factual allegations regarding a defendant's purported misstatement generally undermines the need for subclasses or co-lead plaintiffs. *See Id.* ("In this case, the factual allegations are identical[,] and the same general legal theory applies for both classes. The fact that different securities are involved does not necessarily merit a separate subclass."); *see also Aronson v. McKesson HBOC, Inc.*, 79 F. Supp. 2d 1146, 1151 (N.D. Cal. 1999) (emphasizing that different "theories of recovery involv[ing] different showings of scienter and proof" do not justify "the need for a separate lead plaintiff" where "all claims are based on the same financial disclosures"); *cf. In re Winstar Commc'ns Sec. Litig.*, 290 F.R.D. 437, 452 (S.D.N.Y. 2013) (concluding that plaintiffs "have class standing to represent both stock and bond purchasers" because the defendant's alleged misstatement "implicates the same set of concerns for all investors in [the defendant's] securities, including stocks and bonds, because of their common concern for the company's financial health").

With this precedent in mind, the underlying factual allegations in this instant action demonstrate that all investors of B. Riley securities—whether in the form of common stock or notes—allege harm deriving from the same misstatements about the artificially inflated price of B. Riley's securities during the Class Period of May 2023 to November 2023. *See* (ECF No. 1 ("Compl.") ¶ 73). Plaintiff Coan's contention that Plaintiff Kamholz Trust "is incentivized to settle early so that it will receive settlement funds in addition to the payment on its matured notes" is insufficient to deem Kamholz Trust atypical and inadequate. (ECF No. 29 at 17). First, such argument purely rests on speculation. *See Aronson*, 79 F. Supp.

2d at 1151 ("Their speculations about possible conflicts do not rebut the statutory presumption that one lead plaintiff can vigorously pursue *all* available causes of action against all possible defendants under *all* available legal theories.") (emphasis in original). Further, as Plaintiff Kamholz Trust acknowledges, vigorously litigating all claims and maximizing any potential settlement outcome remain in the best interest of Kamholz Trust. *See* (ECF No. 33 at 14). Plus, in any event, Federal Rule of Civil Procedure 23(e), governing class action settlements, provides guardrails against such collusion by requiring the Court to thoroughly examine any proposed class settlement to ensure that "it is fair, reasonable, and adequate . . . ." Fed. R. Civ. P. 23(e)(2). Thus, absent a showing of possible unique defenses or conflicting interests, Plaintiff Kamholz Trust stands as the proper lead plaintiff, as it satisfies all three elements outlined in 15 U.S.C. § 78u-4.[3]

Should the Court discover that Plaintiff Kamholz Trust's position as lead plaintiff is no longer warranted, the Court reserves the right to revisit such issue. *See, e.g.*, *Glauser v. EVCI Center Colleges Holding Corp.*, 236 F.R.D. 184, 189-90 (2006) (noting that as "a general rule" when "all plaintiffs are similarly situated in terms of injury . . . the class is best served by having one Lead Plaintiff and one Lead Counsel to minimize legal fees" but nevertheless reserving the right to "revisit the issue" involving appointment of lead plaintiff); *In re Peregrine Sys.*, 2002 WL 32769239, at *16 (emphasizing that the court may revisit the appointment of co-lead plaintiffs "if there is a good cause to do so"); *Greebel v. FTP Software, Inc.*, 939 F. Supp. 57, 60–61 (D. Mass. 1996) ("[The court's] determination to appoint a person or persons as lead plaintiff must be without prejudice to the possibility of revisiting that issue in considering a motion for class certification . . . ."). [4]

---

[3] Plaintiff Coan also contends that Kamholz Trust's standing remains in jeopardy if Defendant decides to exercise its option of redeeming the 6% Senior Notes. *See* (ECF No. 29 at 17). Again, such contention remains purely conjectural, especially considering that Defendant may only redeem such notes at a significant price. *See* (ECF No. 33) (noting that Defendant's choice to redeem the 6% Senior Notes may cost the Defendant hundreds of millions of dollars).

[4] The Court also finds that the Chin Trusts, through the initial and supplemental briefing, have been given opportunities to rebut any showing that Coan or Kamholz Trust stood as

**B.      Selection of Class Counsel**

The PSLRA provides that "[t]he most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(v); *see also Cavanaugh*, 306 F.3d at 733, n.11 ("At a later stage in the proceedings, the district court must approve the lead plaintiff's choice of counsel, but Congress gave the lead plaintiff, and not the court, the power to select a lawyer for the class."). The Ninth Circuit recognizes "a strong presumption in favor of approving a properly-selected lead plaintiff's decisions as to counsel selection and counsel retention." *Id.* at 734, n.14 (citation omitted). Indeed, "[a] court may disturb the lead plaintiff's choice of counsel only if it appears necessary to 'protect the interests of the class.'" *Tanne*, 226 F.R.D. at 673 (quoting 15 U.S.C. § 78u-(a)(3)(B)(iii)(II)(aa)).

Here, Kamholz Trust requests that the Court approve its selection of Pomerantz LLP. (ECF No. 16 at 7). Given the absence of any argument or evidence that this "choice of counsel is so irrational, or so tainted by self-dealing or conflict of interest, as to cast genuine and serious doubt on that plaintiff's willingness or ability to perform the functions of lead plaintiff," *Cavanaugh*, 306 F.3d at 733, the Court grants Kamholz Trust's motion to approve its selection of lead counsel for the putative class.

**IV.     CONCLUSION**

For the foregoing reasons, the Court DENIES Plaintiffs Coan and Chin Trusts'

//
//
//
//
//

---

the presumptive lead plaintiff, *see Cavanaugh*, 306 F.3d at 731, and based on the briefing in this matter, Kamholz Trust has made a *prima facie* showing of typicality and adequacy, which neither Chin Trusts nor Coan have successfully rebutted. *See, e.g.*, (ECF Nos. 31 at 15-16 and 34 at 19); *see also* (Chin Trusts Opp.).

1  motions and GRANTS Plaintiff Kamholz Trust's motion. The Court hereby appoints
2  Kamholz Trust as lead plaintiff and approves Pomerantz LLP as lead counsel.
3  **IT IS SO ORDERED.**
4
5  DATED: February 4, 2025
6                                              Hon. Sherilyn Peace Garnett
7                                              U.S. District Judge