**POMERANTZ LLP**
Justin D. D'Aloia (*pro hac vice*)
jdaloia@pomlaw.com
Jennifer Pafiti (SBN 282890)
jpafiti@pomlaw.com
600 Third Avenue, 20th Floor
New York, New York  10016
Telephone:  (212) 661-1100

*Counsel for Lead Plaintiff The KL Kamholz Joint Revocable Trust and Lead Counsel for the Proposed Class*

— additional counsel on signature page —

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| *In re B. Riley Financial, Inc. Securities Litigation*<br><br>This Document Relates to:<br>All Action | Master File No. 2:24-cv-00662-SPG-AJR<br><br>**[PROPOSED] STIPULATED ORDER REGARDING ELECTRONIC DISCOVERY** |

The Parties in this Action anticipate that discovery will likely involve the production of ESI and/or other Electronic Documents and have jointly agreed to the following protocols to ensure uniformity and minimize disputes regarding the manner in which such materials are processed, searched, and produced. Accordingly, the Parties hereto, by and through their undersigned attorneys, hereby stipulate to and petition the Court to enter this Order to govern how the Parties manage ESI and/or other Electronic Documents for purposes of discovery this Action.

**1.  DEFINITIONS**

  1.1. <u>Action</u>.  The above-captioned action.

  1.2. <u>Defendants</u>.  Defendants B. Riley Financial, Inc., Bryant Riley, Tom Kelleher, and Phillip J. Ahn.

  1.3. <u>Electronic Document</u>.  A document stored electronically, whether in its original form or as a copy of a physical document.

  1.4. <u>ESI</u>.  Electronically stored information as used in Rule 34 of the Federal Rules of Civil Procedure.

  1.5. <u>Family</u>.  A group of static documents maintained as a single unit in the ordinary course of business (*e.g.*, an email and its attachments).

  1.6. <u>Lead Plaintiff</u>.  Court-appointed lead plaintiff The KL Kamholz Joint Revocable Trust.

  1.7. <u>Native Format</u>.  The default format of ESI created by the associated software program and also includes the export format of documents that are not maintained in a usable Native Format.

  1.8. <u>Optical Character Recognition ("OCR")</u>.  The process by which a hard copy or non-searchable Electronic Document is scanned by a computer to capture text from the face of the document.

  1.9. <u>Order</u>.  This Stipulated Order Regarding Electronic Discovery.

  1.10. <u>Parties</u>.  Plaintiffs and Defendants.

  1.11. <u>Plaintiffs</u>.  Lead Plaintiff and additional plaintiff Mike Coan.

1.12. <u>Privileged Information</u>.  Information protected from disclosure by the attorney-client privilege, the attorney work product doctrine, and/or any other applicable privilege, immunity, or protection.

1.13. <u>Producing Party</u>.  Any Party that produces ESI or Electronic Documents that are subject to this Order.

1.14. <u>Receiving Party</u>.  Any Party that receives ESI or Electronic Documents from a Producing Party.

**2.     PROCESSING SPECIFICATIONS**

2.1.   <u>ESI</u>.  ESI shall be processed in a manner that preserves the source file in its Native Format and all metadata without modification, including any Family relationships and its existing time, date, and time-zone metadata consistent with the requirements provided in this Order.  Time-zone metadata shall be processed and standardized to Coordinated Universal Time (UTC).  In addition, ESI shall be processed, to the extent practicable, in a manner that preserves hidden columns or rows, hidden text, notes, or worksheets, speaker notes, tracked changes, redlines, and comments.

2.2.   <u>Compressed Files and Encrypted Files</u>.  Compressed file types (*e.g.*, .CAB, .GZ, .TAR, .Z, .ZIP) shall be decompressed in a reiterative manner to ensure that a zip within a zip is decompressed into the lowest possible compression resulting in individual files. The Producing Party will take reasonable steps, prior to production, to unencrypt any discoverable ESI that exists in encrypted format (*e.g.*, because password protected) and that can be reasonably unencrypted.

2.3.   <u>Hard Copy Documents</u>.  All hard copy documents will be scanned for production in electronic form.  Hard copy documents with color will be scanned in color and processed in JPG file format while all others will be scanned as TIFF images.  To the extent practicable, hard copy documents shall be unitized using logical document determinations ("LDD").  For example, hard copy documents that are segregated or separated from other documents, whether by use of binders, files, dividers, tables, clips, or any other method, shall be unitized in a manner that preserves these relationships and

divisions to the extent practicable. Likewise, distinct documents must not be merged into a single record, and single documents must not be split into multiple records. Where a document or group of documents has an identification spine, cover note, or any other label, the information on the spine, note, or label shall be scanned to the extent practicable. For the avoidance of doubt, scanning a hard copy document does not relieve the Party from the obligation to preserve the originals.

## 3.   SEARCH AND REVIEW PROTOCOLS

3.1.   <u>Search Parameters</u>. The Parties agree to provide notice in writing of all search criteria they plan to use or apply to ESI to narrow the universe of documents for review, such as search terms, date restrictions, or custodial sources, including any electronic systems or databases that the Party may reasonably believe are likely to have responsive documents or other ESI. The Parties will meet and confer in good faith and endeavor to agree to mutually acceptable search parameters. Receiving Parties retain the right, upon reviewing the production of documents, and conducting other investigation and discovery, to request that the Producing Party use different or additional criteria and to meet and confer regarding each such request. The Parties may add, change, or supplement the search parameters upon agreement in writing or upon relief from the Court.

3.2.   <u>Suppression Filters</u>. The Parties may use filters to suppress from review and production certain file types that, if produced, would be provided in the form of technical slipsheets (*e.g.*, bin files, DAT files) or embedded images contained within other members of a Family (*e.g.*, logo files from email signature blocks), provided that the image does, in fact, appear within the other Family members where it was originally located.

3.3.   <u>Limiting Review Universe</u>. No Party will use any other software, technology, or method not specified herein to reduce the number of documents to be reviewed or produced without the written consent of all other Parties. In the event the Parties are unable to reach agreement on the use of such software, techniques, or technology, the Party that wishes to use such software, technique, or technology may submit the matter to the Court for resolution. For the avoidance of doubt, no Party will use email thread suppression to

limit the production of responsive documents without the written consent of all other Parties.

3.4. <u>Technology-Assisted Review</u>. The Parties agree to provide notice in writing if they plan to use any automated process to designate documents as responsive or non-responsive without human confirmation that each such document is, in fact, responsive or non-responsive, including a detailed description of the processes to be used and their accuracy, and not use any such processes absent the mutual consent of the Parties in writing. In the event the Parties are unable to reach agreement on the use of such software, techniques, or technology, the Party that wishes to use such software, technique, or technology may submit the matter to the Court for resolution.

3.5. <u>Responsiveness</u>. The Parties agree that if any document (*e.g.*, a parent e-mail) is responsive to a document request, all attachments to that document shall be produced in full unless redacted or withheld to protect Privileged Information. Likewise, if any attachment to a document is responsive to a document request, all portions of the document to which it is attached and all other attachments to that document shall be produced in full unless redacted or withheld to protect Privileged Information.

4. **PRODUCTION REQUIREMENTS**

4.1. <u>Production Format</u>. Documents shall be produced in Native Format or as a TIFF image with accompanying data and image load files as set forth below:

(a) Presentation-application files (*e.g.*, .ppt, .pptx), spreadsheet-application files (*e.g.*, Excel, .csv), and multimedia audio/visual files such as voice and video recordings (*e.g.*, .wav, .mpeg, and .avi), shall be produced in native format, except where production in Native Format would reveal Privileged Information. For files produced in Native Format, the Producing Party shall provide a single-page TIFF slipsheet with the applicable Bates stamp and a text overlay stating that a native file was produced. The corresponding load (.DAT) file shall include a Native File Link which provides the relative path linking information for each native file that is produced. In addition, the confidentiality designation will be indicated in the name of the native and text file where

reasonably feasible.

(b) All documents other than those produced in Native Format will be produced as single-page, black and white Group IV TIFF image files of at least 300 dpi resolution with 1 bit depth. Page size shall be 8.5 x 11 inches, unless in the reasonable judgment of the Producing Party, a particular item requires a different page size. Each image file will use the Bates number of the page as its unique file name. Original document orientation as displayed in the native file should be maintained in the TIFF image (*i.e.*, portrait to portrait and landscape to landscape). The TIFF will show all text and images which would be visible to a reader using the native software that created the document.

4.2. <u>Text Files</u>. Each document produced under this Order shall be accompanied by a single, multipage text file containing all the produced text for that document, including hidden text, revisions, track changes, speaker notes, or other hidden items. Each text file shall be named to use the Bates number of the first page of the corresponding production item. The text files shall be generated by extracted text from native files and OCR text files for all other files that lack extracted text, including electronic copies of hard copy documents. The parties acknowledge that not all documents, such as photographs or documents with handwritten notes, may lend themselves to the generation of accurate OCR. OCR software should be set to the highest quality setting during processing. The .DAT load file shall include a link to the corresponding text file.

4.3. <u>Families</u>. The Parties will produce full Families, preserving the parent and attachment relationship; however, the Parties (a) may withhold any parent and/or attachment(s) as privileged by producing slip sheet(s) in lieu of the document; and (b) have no obligation to produce as slip-sheets Families that are fully withheld from production, provided such Families have been, or will be, identified in a privilege log.

4.4. <u>Metadata</u>. ESI items shall be produced with all of the metadata and coding fields set forth in Appendix 2. This Order does not impose any obligation to create or manually code fields that are not automatically generated by the processing of the ESI or that do not exist as part of the original metadata of the document; provided, however, that

the Producing Party must populate, where possible, the following fields: (1) Beg Bates, (2) End Bates, (3) Custodian, (4) Beg Attach, (5) End Attach, (6) All Custodian, (7) Attach Name, (8) Embedded File, (9) Redaction, (10) Confidentiality, (11) Text Path, and (12) Native File Link.  The foregoing fields, if applicable, should be populated for all produced ESI and other Electronic Documents, regardless of whether the fields can be populated pursuant to an automated process.

4.5.    <u>Bates Numbering</u>.

(a)     The Producing Party will brand each TIFF image in the lower right-hand corner with a Bates number, using a consistent font type and size, that: (1) is unique across the entire document production; (2) maintains a constant length of nine numeric digits (including 0-padding) across the entire production; (3) contains only alphanumeric characters, no special characters or embedded spaces; and (4) is sequential within a given document.

(b)     Parent-child relationships for all document Families (*e.g.*, a parent email and its attachments), must be preserved by assigning sequential Bates numbers to all items within the parent-child group, and identifying those Bates numbers in the relevant ESI metadata and coding fields specified in Appendix 2.

(c)     The Producing Party will identify the Bates number range of each production in a cover letter or production log accompanying the production.  If a Producing Party skips a Bates number or set of Bates numbers in any production, or between productions, the Producing Party will identify and note the gap in the cover letter or production log accompanying the production.

(d)     If the Receiving Party believes that a Bates number obscures the content of a document, then the Receiving Party may request that the document be produced with the Bates number in a different position or reproduced in Native Form.

4.6.    <u>Confidentiality Designations</u>.  If a particular document has a confidentiality designation, the designation shall be stamped on the face of each TIFF image associated with such document in the lower left-hand corner of each such TIFF image or as close

thereto as possible while preserving the underlying image. For each document marked CONFIDENTIAL, the Confidentiality metadata field will be populated with the word "Confidential" in the .DAT file. For each document marked HIGHLY CONFIDENTIAL, the Confidentiality metadata field will be populated with the words "Highly Confidential" in the .DAT file. If the Receiving Party believes that a confidentiality designation obscures the content of a document, then the Receiving Party may request that the document be produced with the confidentiality designation in a different position. No Party may attach to any filing or any correspondence addressed to the Court, or any adverse or third party, or submit as an exhibit at a deposition or any other judicial proceeding, a copy (whether electronic or otherwise) of any native format document produced by any party without ensuring that the corresponding Bates number and confidentiality legend, as designated by the Producing Party, appears on the document.

4.7. <u>Privileged Information</u>.

(a) If a document is withheld in its entirety on the ground that it contains Privileged Information, then the Producing Party shall produce a single-page TIFF slipsheet in its place with text clearly stating that the document was withheld from production and specifying all grounds for doing so. Any metadata for such a document should remain unchanged and be produced in accordance with this Order unless it must be redacted or withheld to protect Privileged Information, in which case the Producing Party shall include on a privilege log each field that was redacted to protect Privileged Information and identify the basis for the claim.

(b) If redactions are sufficient to preserve the Privileged Information within a document, then the Producing Party shall produce the document in TIFF format with redactions that use a text overlay to clearly designate each redaction and specify all grounds for the redaction without obscuring any other parts of the document that do not contain Privileged Information. If a TIFF image production is not practicable (*e.g.*, the file is a video or very large spreadsheet), the Producing Party may produce a copy of the native file with the relevant portions replaced with "REDACTED," a black redaction box, or a

similar mark. Any metadata for such a document should remain unchanged and be produced in accordance with this Order unless it must be redacted or withheld to protect Privileged Information, in which case the metadata field should be updated to clearly state that it was redacted or withheld and identify all grounds for doing so. For each document that is redacted, the Redaction metadata field shall be populated with the word "REDACTED" in the .DAT file.

(c) If a PowerPoint or Excel-type spreadsheet must be produced in TIFF form to preserve Privileged Information, the following printing options shall be enabled for purposes of creating the TIFF image to ensure that all hidden fields and other information that does not print when opened as last saved by the custodian or end-user are displayed in the TIFF image:

| **Excel Print to TIFF Options** |
| --- |
| • Unhide columns and rows<br>• Unhide worksheets<br>• Autofit columns and rows, settings to be over by columns first and, then down by rows<br>• Wrap text<br>• Print gridlines<br>• Do not apply Autofilter<br>• Display headings<br>• Display comments<br>• Header and Footer filename field handling: Show field code |
| **PowerPoint Print to TIFF Options** |
| • Print notes pages<br>• Print hidden slides<br>• Print comments |

The Producing Party shall also make reasonable efforts to ensure that any spreadsheets produced as TIFF images are formatted so as to be legible.

4.8. Global De-duplication. The Producing Party need only produce a single copy of the same ESI by de-duplicating ESI horizontally (globally) across the population of records, in accordance with the following provisions:

     (a)    Duplicates shall be identified by using industry standard MD5 or SHA-1 hash values only to create and compare hash values for exact matches at the document level.  The resulting hash value for each item shall be reflected in the .DAT load file in the Hash Value metadata field specified in Appendix 2.

     (b)    If a Producing Party elects to de-duplicate horizontally, the Producing Party shall identify all custodians who were in possession of any de-duplicated document in the All Custodian metadata field, including the custodian of the document that is not de-duplicated.  The Producing Party agrees that the presence of a custodian's name in the All Custodian metadata field for a specific document is evidence that the custodian possessed that document in his, her, or its files.

     (c)    De-duplication shall not break apart Families.  Documents may be de-duplicated at the Family-group level provided that (i) only exact (bit-by-bit) duplicates are subject to de-duplication; (ii) the Producing Party identifies the additional custodians in the All Custodian metadata field; and (iii) an email that includes content in the BCC or other blind copy fields shall not be treated as a duplicate of an email that does not include content in the BCC or other blind copy field, even if all remaining content in the email is identical.  A document and all other documents in its attachment range, emails with attachments and files with extracted embedded OLE documents all constitute Family groups.

4.9.  <u>De-NISTing</u>.  The industry standard list of system files maintained in the National Software Reference Library by the National Institute of Standards & Technology (NIST) need not be produced.  The Parties may mutually agree upon any additional file types that can be excluded from review and production under this Paragraph.  If a Party excludes from review or production a standard file type not within the NIST standard, that Party must disclose such an exclusion to the other Parties in writing.

4.10.  <u>Load Files</u>.  All productions will be provided with data load files and image load files as detailed in Appendix 1.  The data load file must be in standard Concordance format (.DAT).  The image load file must be in standard Option (.OPT) format and must reference each TIFF file in the corresponding production, i.e., the total number of TIFF

files referenced in the load file must match the total number of image files in the production. The total number of documents referenced in a production's data load file must match the total number of designated document breaks in the corresponding image load file for that production. In any deliverable volume, documents should be organized in such a way that each folder in the volume contains 1,000 files (each TIFF page or native file is a single file) per folder.

4.11. <u>Production Media</u>. The Parties shall produce documents via encrypted optical media (*e.g.*, CD, DVD), external hard drive, secure FTP, secure web-based file transfer service, or similar electronic format, with explicit decryption instructions. Each production should have a distinct volume name and each production should be numbered consecutively (*e.g.*, ABC001, ABC002, etc.). Productions shall have the following four directories and/or ZIP files: (1) IMAGES for the images; (2) DATA for the .DAT and .OPT files; (3) TEXT for the extracted text/OCR files; and (4) NATIVES for any files produced in Native Format.

4.12. <u>Reproduction</u>. Where a Party seeks the production of any documents produced in another proceeding, or where a prior production of documents by a Party in another proceeding is the only reasonably accessible source of those documents to be produced in this Action, the Producing Party may re-produce such documents in the manner in which they were produced in the other proceeding, including all objective coding or metadata fields required by this Order to the extent reasonably available to the Producing Party as part of the productions set. For any such re-production in accordance with this Paragraph, the Producing Party is not obligated to re-format the prior production in accordance with the production specifications in this Order but must provide Bates numbering and confidentiality designations specific to this litigation.

4.13. <u>Right to Request Original Form</u>. The Receiving Party reserves the right to request that a Producing Party reproduce ESI in Native Form or that the Producing Party grant it access to inspect original hard copy documents produced in electronic form if the standard production format limits the Receiving Party's ability to review the document or

otherwise obscures potentially relevant information. To the extent any Party makes such a request, the Producing Party shall respond reasonably and in good faith to any such request. If such request is denied, the Receiving Party may seek relief from the Court.

5. **DATABASES AND OTHER SPECIALIZED DATA SOURCES**

    5.1. <u>Databases and Specialized Data Sources</u>. The Parties will meet and confer to address the production form and production format of any responsive ESI contained in a database or other structured or aggregated data source that cannot be produced in accordance with the provisions set forth above. To the extent there are any dynamic databases (*e.g.*, SQL and SAP) for which document extraction would be substantially burdensome and/or the extracted format is not usable, the parties will meet and confer to determine the most reasonable form of production based on the specific circumstances. Prior to any such meet and confer, the Producing Party will provide sufficient information to enable the Receiving Party to evaluate the best method and format of production, including information such as the database or data store name, business purpose, database or data source owner, database schema, tables, column/field definitions, standard reports, export capabilities, and administrator, programmer and user manuals. If the Parties cannot reach agreement, the issue may be submitted to the Court.

    5.2. <u>Proprietary or Specialized Software</u>. To the extent that relevant ESI cannot be rendered or viewed without the use of proprietary or special software, the Parties shall meet and confer to minimize any expense or burden associated with the production of such documents in an acceptable format, including issues as may arise with respect to obtaining access to any such software.

6. **MISCELLANEOUS**

    6.1. <u>Relation to Other Rules</u>. This Order serves as a supplement to the Federal Rules of Civil Procedure, the Local Civil Rules, and other applicable rules and orders. Nothing in this Order is intended to abridge the Parties' obligations under the Federal Rules of Civil Procedure, the Local Civil Rules, or other applicable rules or orders.

    6.2. <u>Objections Preserved</u>. Nothing in this Order shall be interpreted to require

disclosure of either irrelevant information or Privileged Information. Except as provided herein, the Parties do not waive and expressly preserve any objections as to the production, discoverability, authenticity, admissibility, or confidentiality of all documents, including ESI.

6.3. <u>Disputes</u>. Any disputes arising out of this Order shall be resolved according to Federal Rules of Civil Procedure, the Local Civil Rules, and any other applicable rules or orders.

6.4. <u>Modifications</u>. The Parties recognize that this Order is based on facts and circumstances as they are currently known to each Party and that the electronic discovery process is iterative. As such, any practice or procedure set forth herein may be modified by agreement of the Parties, confirmed in writing, to accommodate such issues and/or where such modification is deemed appropriate to facilitate the timely and economical production of ESI or Electronic Documents. No Party shall unreasonably object to any such modification request. Otherwise, the Court may modify this Order for good cause shown.

IT IS SO STIPULATED, THROUGH COUNSEL OF RECORD.

Dated: January 29, 2026                                      Respectfully submitted,

/s/ Justin D. D'Aloia                                        /s/ Adam S. Paris
Justin D. D'Aloia (*pro hac vice*)                           Adam S. Paris (SBN 190693)
Guy Yedwab (*pro hac vice*)                                  parisa@sullcrom.com
**POMERANTZ LLP**                                            Diane L. McGimsey (SBN 234953)
600 Third Avenue, 20th Floor                                 mcgimseyd@sullcrom.com
New York, New York 10016                                     Emily D. Olsen (SBN 353281)
Telephone: (212) 661-1100                                    olseneM@sullcrom.com
jdaloia@pomlaw.com                                           **SULLIVAN & CROMWELL LLP**
gyedwab@pomlaw.com                                           1888 Century Park East
                                                             Los Angeles, California 90067
Jennifer Pafiti (SBN 282790)                                 Telephone: (310) 712-6600
**POMERANTZ LLP**                                            Facsimile: (310) 712-8800

| | | |
|---|---|---|
| 1 | 1100 Glendon Avenue, 15th Floor | |
| 2 | Los Angeles, California  90024 | *Attorneys for Defendants B. Riley* |
|   | Telephone:  (310) 405-7190 | *Financial, Inc. and Bryant Riley* |
| 3 | jpafiti@pomlaw.com | |

*Counsel for Lead Plaintiff and Lead Counsel for the Proposed Class*

Joshua E. Fruchter (*pro hac vice*)
**WOHL & FRUCHTER LLP**
25 Robert Pitt Drive, Suite 209G
Monsey, New York 10952
Telephone: (845) 290-6818
jfruchter@wohlfruchter.com

*Additional Counsel for Lead Plaintiff*

Robert V. Prongay (SBN 270796)
Raymond D. Sulentic (SBN 316913)
**GLANCY PROGNAY & MURRAY LLP**
1925 Century Park East, Suite 2100
Los Angeles, California  90067
Telephone:  (310) 201-9150
rprongay@glancylaw.com
rsulentic@glancylaw.com

*Counsel for Plaintiff Mike Coan*

FOR GOOD CAUSE SHOWN, IT IS SO ORDERED.

DATED: _____                    _____
                                                  HON. A. JOEL RICHLIN
                                                  United States Magistrate Judge

**Appendix 1: Production Delivery Requirements**

<u>Image Load Files</u>

- Image load (cross-reference) files should be produced in Concordance Image (Opticon) format.
- The name of the image load file should mirror the name of the delivery volume, and should have the appropriate extension (e.g., ABC001.OPT).
- The volume names should be consecutive (e.g., ABC001, ABC002, et seq.).
- There should be one row in the load file for every TIFF image in the production.
- Every image in the delivery volume should be cross-referenced in the image load file.
- The imageID key should be named the same as the Bates number of the page.
- Load files should not span across media (e.g., CDs, DVDs, hard drives, etc.), i.e., a separate volume should be created for each piece of media delivered.
- Files that are the first page of a logical document should include a "Y" where appropriate.
- Subsequent pages of all documents (regular document, email, or attachment) should include a blank in the appropriate position.

<u>Sample Concordance/Opticon Image (.OPT) Load File</u>

- ABC000001,ABC001,D:\IMAGES\001\ABC000001.TIF,Y,,,3
- ABC000002,ABC001,D:\IMAGES\001\ABC000002.TIF,,,,
- ABC000003,ABC001,D:\IMAGES\001\ABC000003.TIF,,,,
- ABC000004,ABC001,D:\IMAGES\001\ABC000004.TIF,Y,,,2
- ABC000005,ABC001,D:\IMAGES\001\ABC000005.TIF,,,,

<u>Concordance Data Load Files</u>

- Data load files should be produced in Concordance .DAT format.
- The data load file should use standard Concordance delimiters:
    - Comma - ¶ (ASCII 20).
    - Quote - þ (ASCII 254).

- o   Newline - ® (ASCII174).
- The first line of the .DAT file should contain the field names arranged in the same order as the data is arranged in subsequent lines.
- All date fields should be produced in mm/dd/yyyy format, if possible.
- All attachments should sequentially follow the parent document/email.
- Use carriage-return to indicate the start of the next record.
- The name of the data load file should mirror the name of the delivery volume, and should have a .DAT extension (e.g., ABC001.DAT)
- The volume names should be consecutive (e.g., ABC001, ABC002, et seq.).

Sample Concordance .DAT Load File

þBegBatesþ¶þEndBatesþ¶þBegAttachþ¶þEndAttachþ¶þPgCountþ¶þCustodianþ

Sample Native file link/path

The .DAT file shall contain a relative path to the corresponding Native file: PROD001\Natives\001\ABC00015.xls

OCR/Extracted Text Files

OCR or Extracted Text files shall be provided in a separate directory containing document level text files. The .DAT file shall contain a relative path to the corresponding text file. OCR or Extracted text itself should not be included in the .DAT file: PROD001\TEXT\001\ABC00015.txt

# Appendix 2: ESI Metadata and Coding Fields

The chart below describes the metadata fields to be produced, where reasonably available, in generic, commonly used terms which the producing party is to adapt to the specific types of ESI it is producing, to the extent such metadata fields exist associated with the original electronic documents and are automatically generated as part of the electronic data discovery process. Any ambiguity about a metadata field should be discussed with the Receiving Party prior to processing the subject ESI for production.

| Metadata Field | Description |
| --- | --- |
| Beg Bates | First Bates number of an item |
| End Bates | Last Bates number of an item |
| Beg Attach | First Bates number of attachment range |
| End Attach | Last Bates number of attachment range |
| Parent ID | BegBates of the parent item in a Family |
| Custodian | Name of person or source from which the item is produced |
| All Custodian | Name of all persons, in addition to the Custodian, from which the item would have been produced if it had not been de-duplicated |
| Author | Any value populated in the Author field of the source file metadata or document properties |
| File Name | The filename of the source native file |
| Doc Title | Any value populated in the Title field of the source file metadata or item properties |
| Attach Name | File name of the attachment, with any attachments separated by semi-colon |
| File Extension | Indicates file extension of the file, *e.g.*, .docx, .pptx, etc. |
| File Type | *e.g.*, Outlook, Adobe Acrobat, MS Word, etc. |
| File Size | Size (in kilobytes) of the source native file |
| Page Count | Number of pages in the item |
| To | The names and/or SMTP email addresses of all recipients that were included on the "To" line of the email or calendar item |
| From | The name and/or SMTP email address of the sender of the email or calendar item |
| CC | The names and/or SMTP email addresses of all recipients |

| Metadata Field | Description |
| --- | --- |
|  | that were included on the "CC" line of the email or calendar item |
| BCC | The names and/or SMTP email addresses of all recipients that were included on the "BCC" line of the email or calendar item |
| Subject | Any value populated in the Subject field of the source file metadata or document properties |
| Importance | E-mail importance flag |
| Embedded File | Yes/no indicator as to whether file is embedded or not |
| Date Sent | Date email or calendar item was sent (mm/dd/yyyy) |
| Time Sent | Time email or calendar item was sent (hh:mm AM/PM) |
| Date Received | Date email or calendar item was received (mm/dd/yyyy) |
| Time Received | Time email or calendar item was received (hh:mm AM/PM) |
| Date Created | Date the item was created (mm/dd/yyyy) |
| Time Created | Time the item was created (hh:mm AM/PM) |
| Last Mod Date | Date the item was last modified (mm/dd/yyyy) |
| Last Mod Time | Time the item was last modified (hh:mm AM/PM) |
| Last Printed Date | Date the document was last printed (mm/dd/yyyy) |
| Last Printed Time | Time the document was last printed (hh:mm AM/PM) |
| Last Mod By | Person who last modified or saved the item, as populated in the metadata or document properties of the native file |
| Meeting Start Date | Start date of calendar entry (mm/dd/yyyy) |
| Meeting Start Time | Start time of calendar entry (hh:mm AM/PM) |
| Meeting End Date | End date of calendar entry (mm/dd/yyyy) |
| Meeting End Time | End time of calendar entry (hh:mm AM/PM) |
| Parent Date | The date associated with a parent record in a Family, assigned as follows:<br>• Emails populated with 1st occurrence: **Date Sent** or **Date Received** or **Last Mod Date**<br>• Outlook Appointments populated with 1st occurrence: **Meeting Start Date** or **Last Mod Date**<br>• Loose Edocs populated with 1st occurrence: **Last Mod Date** or **Date Created** |
| Parent Time | The date associated with a parent record in a Family, assigned as follows<br>• Emails populated with 1st occurrence: **Time Sent** or **Time Received** or **Last Mod Time** |

4
[PROPOSED] STIPULATED ORDER
REGARDING ELECTRONIC DISCOVERY

| Metadata Field | Description |
|---|---|
| | • Outlook Appointments populated with 1st occurrence: **Meeting Start Date** or **Last Mod Time**<br>• Loose Edocs populated with 1st occurrence: **Last Mod Time** or **Time Created** |
| Time Zone | Time zone used to process the item |
| Hash Value | The MD5 or SHA-1 or IntMsgID hash value of the item. |
| Redacted | User-generated field that will indicate redactions with the word "REDACTED" otherwise blank |
| Privilege Type | All claims designated on the face of the document for withholding Privileged Information; otherwise blank |
| Confidentiality | User-generated field that will indicate the confidentiality designation by the Producing Party |
| File Path | The directory structure or path where the original file was stored on the party's source computer system, ending in the File Name. Any container name (such as ZIP or PST containers) should be included in this field. |
| Native File Link | Relative path for documents provided in Native Form with the linked file named per the BegBates value |
| Text Path | Full relative path to the location of the document-level text file |